## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

**Zuckerman Spaeder LLP**
    **Plaintiff,**
**v.**

**James A. Auffenberg, Jr.**
    **Defendant.**

CA No. 09 0906 RBW/JMF

## DEFENDANT AUFFENBERG'S AMENDED ANSWER
## TO PLAINTIFF ZUCKERMAN SPAEDER'S FIRST AMENDED COMPLAINT

**THE PARTIES**

1. Admitted that Zuckerman Spaeder is a law firm organized as a limited liability partnership under the laws of the State of Maryland with its principal place of business in Washington, D.C. Second sentence requires neither an admission nor a denial, but to the extent it does the allegation is denied.

2. Admitted.

**JURISDICTION**

3. Admitted. Auffenberg denies that the court has continuing subject matter jurisdiction to proceed to a determination of the merits of this case in that Auffenberg has invoked his right to binding arbitration before the District of Columbia Attorney Client Arbitration Board.

4. Admitted that venue may be proper in this Court, but affirmatively alleges that venue is also proper in the U.S. Virgin Islands and the United States District Court for the Southern District of Illinois. Auffenberg further states that the substantive law of the U.S. Virgin Islands as well as the substantive law of the State of Illinois may apply to the issues raised by Plaintiff's Complaint as the terms of representation were discussed

and entered into in Illinois and the Zuckerman Spaeder law firm represented Auffenberg as trial counsel in the U.S. Virgin Islands.

**FACTUAL ALLEGATIONS**

5.  Admitted.

6.  Defendant admits that on June 13, 2008, while in Illinois, Auffenberg executed a written letter agreement, dated June 5, 2008.  Plaintiff's characterization of the agreement is neither admitted nor denied.

7.  Admitted that in August 2008 Auffenberg executed a supplemental written engagement agreement dated August 29, 2008.  The characterization of the August agreement is neither admitted nor denied.  The last sentence does not require either an admission or a denial.  Auffenberg affirmatively alleges that prior to executing the August 29, 2008 agreement, Auffenberg met with Zuckerman Spaeder attorney Blair Brown in Illinois to negotiate the terms of the Agreement.  The substance of those negotiations and the promises and representations made by Blair Brown were set forth in an email dated August 4, 2008 entitled "Representation by Zuckerman Spaeder".  In the email, Blair Brown described and acknowledged the work to be performed by Zuckerman Spaeder, the terms of the engagement, reliance upon paralegal Jessica Ellis and the firm estimate of $1.5 million dollars in fees and costs through the end of trial.  Auffenberg further affirmatively alleges that in September 2008, Blair Brown and Auffenberg further discussed the terms of representation by Zuckerman Spaeder as reflected in an email dated September 10, 2008 at a meeting in Illinois.  Following the discussions with Blair Brown in Illinois, Auffenberg executed a third written letter agreement which was dated September 10, 2008.

8.  The characterization of the agreement is neither admitted nor denied.

9. Admitted.

10. Admitted as to the last sentence of the paragraph. Defendant lacks information sufficient to provide a basis for admission or denial of the types of activities originating from the District of Columbia office or to the extent that they occurred. Defendant affirmatively states that plaintiff charged for services by support staff that were not agreed to and which were, by agreement, to be provided by a service not affiliated with plaintiff. Auffenberg further alleges, upon information and belief, that the majority of services rendered by Zuckerman Spaeder occurred outside the District of Columbia, either in the Virgin Islands or the District of Columbia.

11. Admitted as to the first sentence. Denied as to the second sentence. Admitted as to the last sentence.

12. Auffenberg admits that Zuckerman Spaeder provided monthly statements to Auffenberg at the address he provided, but denies that said statements adequately itemized "the Firm's services, its expenditures of time, and the fees and costs owed the Firm," as set forth in the first sentence of paragraph 12 of Plaintiff's First Amended Complaint. Auffenberg denies the second statement of paragraph 12 of Plaintiff's First Amended Complaint and affirmatively asserts that on February 17, 2009, Auffenberg requested an explanation from Blair Brown with regard to why the December, 2008 and January, 2009 fees and costs incurred by Zuckerman Spaeder were in excess of the original firm estimate of $1.5 million dollars; that Blair Brown continuously promised to provide such an explanation; but that Blair Brown never provided an explanation for the fees and costs that were incurred in excess of $1.5 million dollars. Auffenberg admits that he has not yet paid the sum of $834,299 and that more than thirty days has elapsed since Zuckerman Spaeder has made demand for payment as alleged in the third sentence

of paragraph 12 of Plaintiff's First Amended Complaint, and further states that to the extent not expressly admitted herein, Auffenberg denies the remaining averments of the third sentence of paragraph 12 of Plaintiff's First Amended Complaint.

### COUNT I – BREACH OF CONTRACT

13. The answers set forth in Paragraphs 1 to 12 of this Answer are re-alleged and incorporated by reference as if fully set forth herein.

14. Admitted that Zuckerman Spaeder and Auffenberg had a contract for legal services, which is contained in the documents described in Auffenberg's AFFIRMATIVE DEFENSES.

15. Denied.

16. Denied.

### COUNT II – QUANTUM MERUIT

17. The answers set forth in Paragraphs 1-16 of this Answer are re-alleged and incorporated by reference as if fully set forth herein.

18. Denied.

19. Denied.

20. Denied.

### PRAYER FOR RELIEF

A. Auffenberg denies that Zuckerman Spaeder is entitled to the amount of damages claimed as set forth in paragraph A of its Prayer For Relief;

B. Auffenberg denies that Zuckerman Spaeder is entitled to the remedy of Quantum Meruit as claimed;

C. Auffenberg denies that Zuckerman Spaeder is entitled to the damages claimed as set forth in paragraph C of its Prayer For Relief;

D.   Auffenberg denies that Zuckerman Spaeder is entitled to the relief requested as set forth in paragraph D of its Prayer For Relief as there was no agreement in place for such relief and said relief cannot be claimed in Quantum Merit; and,

E.   Auffenberg denies that Zuckerman Spaeder is entitled to any further relief as claimed in paragraph E of its Prayer For Relief.

## AFFIRMATIVE DEFENSES

## GENERAL ALLEGATIONS SUPPORTING AFFIRMATIVE DEFENSES

1.   In May 2008, James A. Auffenberg, Jr. (Auffenberg) met with Paula Junghans, a Zuckerman Spaeder partner, for the purpose of arranging for supplemental legal expertise and representation in connection with a pending criminal tax and fraud case (Tax Case), in which Auffenberg was named as a defendant. The Tax Case was then pending in the United States District Court, U.SA. Virgin Islands, St. Croix Division.

2.   At the time of the Paula Junghans interview, attorneys J. William Lucco, Clyde Kuehn and Lee Rohn represented Auffenberg.

3.   At the time of the Paula Junghans interview, Auffenberg informed Paula Junghans that Auffenberg had also retained the services of a paralegal, Jessica Ellis, to provide paralegal-related services and technical assistance, such as document management and establishment of coordinated data bases, among other things.

4.   As a result of the interview, on June 13, 2008, while in Illinois, Auffenberg executed a written letter agreement dated June 5, 2008 – a copy of which is attached hereto as Exhibit A to retain Paula Junghans and the law firm of Zuckerman Spaeder.

5.   At the time Auffenberg retained attorney Junghans and Zuckerman Spaeder, Auffenberg became a client of the law firm of Zuckerman Spaeder and

Zuckerman Spaeder and its attorney employees owed Auffenberg a fiduciary duty in the representation of Auffenberg.

6. At the time Auffenberg executed the June letter agreement, Auffenberg, was not a client that Zuckerman Spaeder had "regularly represented" as defined by Rule 1.5(b) of the D.C. Rules of Professional Conduct (effective February 1, 2007).

7. At the time Auffenberg retained attorney Junghans and Zuckerman Spaeder, the law firm of Zuckerman Spaeder and its attorney employees were obligated, as members of the District of Columbia Bar to follow and abide by the D. C. Rules of Professional Conduct (effective February 1, 2007) in their representation and dealings with Auffenberg.

8. Pursuant to Rule 1.5(b) of the D.C. Rules, when Auffenberg became a client of Zuckerman Spaeder, Zuckerman Spaeder owed Auffenberg a duty to fully inform and advise Auffenberg -– in writing -- of the basis or rate of the fees and costs to be charged, the scope of the lawyer's representation, and the expenses for which the client would be responsible.

9. The June 13, 2008 letter agreement sets forth ***both*** the scope of the anticipated legal representation and the terms of payment as required by Rule 1.5(b) of the D.C. Rules of Professional Conduct (effective February 1, 2007).

10. Between June 13, 2008 and early August, 2008, Paula Junghans represented Auffenberg and acted within the scope of the June 13, 2008 letter agreement.

11. As a part of her representation, attorney Junghans drafted an agreement that was intended to memorialize the hiring of Jessica Ellis.

12. On or about August 1, 2008, Auffenberg met with Zuckerman Spaeder attorney Blair Brown to discuss a revised scope of representation for the Tax Case. On

6

that date, Auffenberg informed Blair Brown that Auffenberg intended to continue the use of Jessica Ellis in order to keep expenses under control.

13.     During the August 1, 2008 meeting with Blair Brown, Auffenberg solicited a firm estimate of the fees and costs involved in the event Auffenberg increased the scope of representation, allowing Blair Brown to act as trial counsel for the Tax Case.

14.     Blair Brown memorialized the August 1, 2008 discussion on the scope of representation in an email dated August 4, 2008 entitled "***Representation by Zuckerman Spaeder***" a copy of which is attached hereto as Exhibit C.  In the email, Blair Brown described and acknowledged the work to be performed by Zuckerman Spaeder, the terms of the engagement, reliance upon paralegal Jessica Ellis and the firm estimate of $1.5 million dollars in fees and costs through the end of trial.

15.     The August 4, 2008 email from Blair Brown specifically stated that a "formal engagement letter setting forth these terms would be executed."

16.     Subsequent to the August 4, 2008 email, Auffenberg spoke with Blair Brown and/or Paula Junghans to determine whether the $1.5 million dollars was a firm number.  As a result of those conversations, Auffenberg was led to believe that his indebtedness to Zuckerman Spaeder would be $1.5 million dollars.

17.     In reliance on the terms set forth in the email entitled "***Representation by Zuckerman Spaeder***" and the conversations with Blair Brown and Paula Junghans, Auffenberg agreed to amend the scope of Zuckerman Spaeder's representation in the Tax Case.

18.     On August 29, 2008, while in Illinois, Auffenberg executed a second written letter agreement (dated August 25, 2008) – a copy of which is attached hereto as Exhibit B.

19. The August 29, 2008 letter agreement does not set forth the entire scope of the representation as outlined in the August 4, 2008 email, but does state that Blair Brown will enter an appearance in the Tax Case and sets forth payment terms.

20. The August 29, 2008 letter agreement, by itself, does not comply with Rule 1.5(b) of the D.C. Rules, as Zuckerman Spaeder owed Auffenberg a duty to fully inform and advise Auffenberg – in writing - of the scope of the lawyer's representation.

21. The August 4, 2008 email describing the scope of representation, when read in conjunction with the August 29, 2008 letter agreement constitute the terms of the representation that Auffenberg agreed to with Zuckerman Spaeder as required by Rule 1.5(b) of the D.C. Rules.

22. Moreover, Auffenberg relied on the August 4, 2008 email to constitute the scope of the representation by Zuckerman Spaeder in the Tax Case.

23. In September, 2008, Blair Brown further discussed with Auffenberg the payment terms of the representation by Zuckerman Spaeder as reflected in an email dated September 10, 2008– a copy of which is attached hereto as Exhibit D.

24. As a result of those discussions, on September 12, 2008, while in Illinois, Auffenberg executed a third written letter agreement (dated September 10, 2008) – a copy of which is attached hereto as Exhibit E.

25. The second paragraph of the August 25, 2008 letter agreement on the scope of representation is identical to the September 12, 2008 letter agreement. Therefore, Auffenberg, in good faith, believed that the promises made by Blair Brown in the August 4, 2008 email that the fees and costs in the case would not exceed a firm estimate of $1.5 million and Zuckerman Spaeder would rely on the services of Jessica Ellis to control costs.

26.     Without inclusion of the terms of the August 4, 2008 email into the letter agreement of September 12, 2008, the September letter agreement fails to comply with Rule 1.5(b) of the D.C. Rules because Zuckerman Spaeder owed Auffenberg a duty to fully inform and advise Auffenberg – in writing - of the scope of the lawyer's representation and the amount of fees and costs to be charged.

27.     At all times relevant herein, the August and September letter agreements were executed in reliance upon the promises and representations made by Blair Brown in his email dated August 4, 2008.

28.     But for the firm estimate that Zuckerman Spaeder would charge fees and costs of $1.5 million dollars and that Zuckerman Spaeder agreed to use Jessica Ellis, Auffenberg would not have executed the August or September 2008 agreements retaining Zuckerman Spaeder or Blair Brown.

29.     At no time has Auffenberg ever received any further writing from Paula Junghans, Blair Brown or Zuckerman Spaeder informing Auffenberg that the scope of representation had changed.

**FIRST AFFIRMATIVE DEFENSE: (Breach of Fiduciary Duty)**

30.     Auffenberg restates and realleges paragraphs 1 through 29 of the General Allegations as though fully set forth hereunder.

31.     Zuckerman Spaeder breached its common law fiduciary obligation to Auffenberg in that Zuckerman Spaeder made a unilateral decision not to use all of the services of Jessica Ellis as previously agreed to, and instead began using their own personnel, thereby increasing the fees and costs of the Zuckerman Spaeder representation.

32. The unilateral decision by Zuckerman Spaeder not to use the services of Jessica Ellis, as agreed to in the August 4, 2008 scope of representation was a material change in the terms of the scope of representation that had been agreed to by Auffenberg.

33. Zuckerman Spaeder did not communicate to Auffenberg - in writing or otherwise - the unilateral decision not to use the services of Jessica Ellis.

34. The failure of Zuckerman Spaeder to communicate to Auffenberg - in writing or otherwise -  the decision not to use the services of Jessica Ellis was a breach of Zuckerman Spaeder's common law fiduciary obligation to Auffenberg.

35. At the time Zuckerman Spaeder made the unilateral decision not to use all of the services of Jessica Ellis, Zuckerman Spaeder knew or should have known that the use of Zuckerman Spaeder personnel to create and coordinate databases and scan documents, among other paralegal functions would substantially increase the fees and costs over the firm estimate of $1.5 million.

36. Zuckerman Spaeder did not communicate to Auffenberg - in writing or otherwise - the anticipated increase in fees and costs that would occur as a result of the unilateral Zuckerman Spaeder decision not to use the services of Jessica Ellis.

37. The failure of Zuckerman Spaeder to communicate to Auffenberg - in writing or otherwise -  the anticipated increase in fees and costs that would occur as a result of the unilateral Zuckerman Spaeder decision not to use the services of Jessica Ellis was a breach of Zuckerman Spaeder's common law fiduciary obligation to Auffenberg.

38. As a direct result of the afore-described breaches of fiduciary duty by Zuckerman Spaeder, Auffenberg was no longer obligated for payment of the fees and costs for the services of Zuckerman Spaeder.

39.     Had Auffenberg known that Zuckerman Spaeder's unilateral decision to stop using Jessica Ellis would result in an increase in fees and costs well in excess of the original firm estimate of $1.5 million dollars, Auffenberg would have terminated or limited his attorney-client relationship with Zuckerman Spaeder.

**SECOND AFFIRMATIVE DEFENSE: (Breach of Contract)**

40.     Auffenberg restates and realleges paragraphs 1 through 39 as though fully set forth hereunder.

41.     Zuckerman Spaeder's unilateral decision not to use all of the services of Jessica Ellis, as previously agreed to, was a breach of the terms of the representation agreement set forth in the August 4, 2008 email from Blair Brown.

42.     As a direct result of the afore-described breach of contract by Zuckerman Spaeder, Auffenberg was no longer obligated for payment of the fees and costs for the services of Zuckerman Spaeder.

43.     Had Auffenberg known that Zuckerman Spaeder's unilateral decision to stop using Jessica Ellis would result in an increase in fees and costs well in excess of the original firm estimate of $1.5 million dollars, Auffenberg would have terminated or limited his attorney-client relationship with Zuckerman Spaeder.

**THIRD AFFIRMATIVE DEFENSE: (Violation of Rule 1.4 of the D.C. Rules)**

44.     Auffenberg restates and realleges paragraphs 1 through 43 as though fully set forth hereunder.

45.     At all times during their representation of Auffenberg, Zuckerman Spaeder was obligated to follow Rule 1.4(a) of the D. C. Rules of Professional Conduct, to wit: (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

46. Zuckerman Spaeder, by and through its employees, including Blair Brown, violated Rule 1.4 of the D.C. Rules of Professional Conduct when they failed to inform Auffenberg of their unilateral decision not to use Jessica Ellis. Specifically, Zuckerman Spaeder failed to provide Auffenberg with sufficient information that fees and costs would materially increase because of their decision not use Jessica Ellis. Auffenberg was thereby denied the ability to participate intelligently in decisions concerning the objectives of the representation and the means by which they were to be pursued.

47. As a direct result of the afore-described violation of the D.C. Rules of Professional Conduct by Zuckerman Spaeder, Auffenberg was no longer obligated for payment of the fees and costs for the services of Zuckerman Spaeder.

48. Had Auffenberg known that Zuckerman Spaeder's unilateral decision to stop using Jessica Ellis would result in an increase in fees and costs well in excess of the original firm estimate of $1.5 million dollars, Auffenberg would have terminated or limited his attorney-client relationship with Zuckerman Spaeder.

**FOURTH AFFIRMATIVE DEFENSE: (Violation of Rule 1.5(b) of the D.C. Rules)**

49. Auffenberg restates and realleges paragraphs 1 through 48 as though fully set forth hereunder.

50. Zuckerman Spaeder's failure to inform Auffenberg – in writing – of the change in scope of the representation agreement violated Rule 1.5(b) of the D.C. Rules.

51. As a direct result of the afore-described violation of Rule 1.5(b) of the D.C. Rules by Zuckerman Spaeder, Auffenberg was no longer obligated for payment of the fees and costs for the services of Zuckerman Spaeder.

52. Had Auffenberg known that Zuckerman Spaeder had unilaterally changed the scope of the representation agreement, such that a decision not to use Jessica Ellis would result in an increase in fees and costs well in excess of the original firm estimate of $1.5 million dollars, Auffenberg would have terminated or limited his attorney-client relationship with Zuckerman Spaeder.

**FIFTH AFFIRMATIVE DEFENSE: (Violation of Rule 1.2(a) of the D.C. Rules)**

53. Auffenberg restates and realleges paragraphs 1 through 52 as though fully set forth hereunder.

54. At all times during their representation of Auffenberg, Zuckerman Spaeder was obligated to follow Rule 1.2(a) of the D. C. Rules of Professional Conduct, to wit: (a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d), and (e), and shall consult with the client as to the means by which they are to be pursued.

55. Zuckerman Spaeder, by and through its employees, including Blair Brown, violated Rule 1.2 of the D.C. Rules of Professional Conduct when they failed to inform Auffenberg of their unilateral decision not to use Jessica Ellis, contrary to Auffenberg's instruction and Zuckerman Spaeder's previous commitment.

56. As a direct result of the afore-described violation of the D.C. Rules of Professional Conduct by Zuckerman Spaeder, Auffenberg was no longer obligated for payment of the fees and costs for the services of Zuckerman Spaeder.

57. Had Auffenberg known that Zuckerman Spaeder's unilateral decision to stop using Jessica Ellis would result in an increase in fees and costs well in excess of the original firm estimate of $1.5 million, Auffenberg would have terminated or limited his attorney-client relationship with Zuckerman Spaeder.

**SIXTH AFFIRMATIVE DEFENSE: (Breach of Fiduciary Duty)**

58. Auffenberg restates and realleges paragraphs 1 through 57 as though fully set forth hereunder.

59. On February 17, 2009, during the trial of the Criminal Proceeding, Auffenberg first learned that Zuckerman Spaeder's fees and costs were going to far exceed the original firm estimate of $1.5 million dollars.

60. Upon learning this information, Auffenberg immediately requested that Blair Brown provide an explanation to Auffenberg.

61. Upon Auffenberg's initial inquiry, Blair Brown indicated he would provide this information within a few days.

62. Blair Brown did not provide the information to Auffenberg as promised by Blair Brown.

63. As a consequence of Blair Brown's refusal to explain the increased fees and costs, during the trial of the Criminal Proceeding, Auffenberg delivered a letter to Blair Brown that limited the scope of the representation of Zuckerman Spaeder in the Criminal Proceeding.

64. Subsequent to the verdict in the Criminal Proceeding, Auffenberg continued to request an explanation for the increase in fees and costs over the $1.5 million firm estimate given by Blair Brown on August 4, 2008.

65. Although Blair Brown continued to promise a written explanation – even after the trial of the Criminal Proceeding was over - Auffenberg has never received any writing from any attorney at Zuckerman Spaeder that explains the increase in fees and costs from the original firm estimate.

66. Instead of a written explanation, as requested by Auffenberg, Zuckerman Spaeder filed this lawsuit against Auffenberg.

67. Upon information and belief, Auffenberg has since learned that the decision not to use Jessica Ellis as initially envisioned by Auffenberg and as originally agreed to by Blair Brown directly caused the increase in fees and costs over the original firm estimate.

68. On February 17, 2009 and subsequent thereto, Blair Brown breached his fiduciary obligations to Auffenberg when he refused to provide any explanation to Auffenberg for the increased fees and costs.

69. As a direct result of the afore-described breach of fiduciary duty by Zuckerman Spaeder, Auffenberg was no longer obligated for payment of the fees and costs for the services of Zuckerman Spaeder.

70. Had Auffenberg known that Zuckerman Spaeder's unilateral decision to stop using Jessica Ellis would result in an increase in fees and costs well in excess of the original firm estimate of $1.5 million dollars, Auffenberg would have terminated or limited his attorney-client relationship with Zuckerman Spaeder as evidenced by his decision to do so on February 17, 2009.

**SEVENTH AFFIRMATIVE DEFENSE: (Violation of Rule 1.4(a) of the D.C. Rules)**

71. Auffenberg restates and realleges paragraphs 1 through 70 as though fully set forth hereunder.

72. The failure by Blair Brown and Zuckerman Spaeder to provide Auffenberg with any written explanation regarding the reasons for the increase in fees and costs over the firm estimate of $1.5 million dollars was a violation of Rule 1.4(a) of the D.C. Rules.

73.     As a direct result of the afore-described violation of Rule 1.4(a) the D.C. Rules of Professional Conduct by Zuckerman Spaeder, Auffenberg was no longer obligated for payment of the fees and costs for the services of Zuckerman Spaeder.

74.     Had Auffenberg known that Zuckerman Spaeder's unilateral decision to stop using Jessica Ellis would result in an increase in fees and costs well in excess of the original firm estimate of $1.5 million dollars, Auffenberg would have terminated or limited his attorney-client relationship with Zuckerman Spaeder.

**EIGHTH AFFIRMATIVE DEFENSE: (Quantum Meruit Not Available Remedy)**

75.     Auffenberg restates and realleges paragraphs 1 through 74 as though fully set forth hereunder.

76.     Quantum Meruit is not available where Zuckerman Spaeder has breached its fiduciary obligations and/or violated the D.C. Rules of Professional Conduct.

77.     In the alternative, should there be a valid contract for attorney services, the equitable doctrine of quantum meruit is not an available remedy.

**NINTH AFFIRMATIVE DEFENSE:  (Mandatory DC ACAB Arbitration)**

78.     Auffenberg restates and realleges paragraphs 1 through 77 as though fully set forth hereunder.

79.     Auffenberg has invoked his right to mandatory and binding arbitration of the fee dispute before the District of Columbia Attorney Client Arbitration Board thereby requiring this court to stay further proceedings pursuant to the provisions of Federal Arbitration Act, 9 U.S.C. §§ 3,4, 16 and 206.

WHEREFORE, Defendant, James A. Auffenberg, Jr. prays for an Order of this Court denying the relief requested and for such further relief as this Court deems just under the circumstances.

**JURY TRIAL DEMANDED**

Pursuant to *Fed. R. Civ. P. 38*, Defendant demands a jury trial for all issues so triable.

                                        By:    /s/ David A. Holzworth
                                                      David A. Holzworth (322966)
                                                      Thomas A. Duckenfield, III (446884)
                                                      ADORNO & YOSS, LLP
                                                      1025 Connecticut Ave NW,
                                                      Suite 1200
                                                      Washington, DC  20036
                                                      Tel:  202-857-0242
                                                      Fax:  202-861-0610
                                                      Email:  dah@adorno.com
                                                                  tduckenfield@adorno.com

                                                      Judy L. Cates (IL Bar No. 00414743)
                                                      THE CATES LAW FIRM, L.L.C.
                                                      216 West Pointe Drive, Suite A
                                                      Swansea, IL 62226
                                                      Tel:  618-227-3644
                                                      Fax:  618-227-7882
                                                      Email:  jcates@cateslaw.com

Date:   March 26, 2010                     Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of March, 2010, I caused true and correct copies of the foregoing document, to be filed with the Clerk of Court and opposition counsel using the ECF system as follows:

Francis D. Carter
Douglas Miller
Zuckerman Spaeder LLP
1800 M STREET, NW
SUITE 1000
WASHINGTON, DC  20036-5802


       /s/  Elizabeth E. Eaton-G.
Elizabeth E. Eaton-G.
Legal Assistant to David A. Holzworth